IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| THOMAS J. HENRY and , <br> THOMAS J. HENRY LAW, <br><br> Plaintiffs, <br><br> v. <br><br> ANGEL L. REYES & ASSOCIATES PC, <br> and ANGEL L. REYES, III, <br><br> Defendants | § § § § § § § § § § § § § <br><br> CIVIL ACTION NO. _____ <br><br> JURY DEMANDED |

## ORIGINAL COMPLAINT

Plaintiffs Thomas J. Henry and Thomas J. Henry Law (collectively "Plaintiffs" or "Thomas J. Henry"), appearing through their undersigned counsel, allege as follows:

### NATURE OF ACTION AND JURISDICTION

1. This is an action for trademark infringement and unfair competition under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* ("Lanham Act"); and for trademark infringement.

2. This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and Chapter 85 of the Judiciary and Judicial Procedure Code, 28 U.S.C. §§ 1331 and 1338.

3. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the district, and Defendants have conducted business in the Southern District of Texas and are subject to the Court's personal jurisdiction with respect to this action. Specifically, venue is proper because Defendants' use of Plaintiffs' trademark is likely to confuse consumers in the Southern District of

Texas. *Thirsty Mule Winery, L.L.C. v. Wild Wild W., L.L.C.*, No. 6:19-CV-00041-ADA, 2019 WL 10302269 at *3 (W. D. Tex. May 13, 2019) (finding venue proper in the district where some of the allegedly deceived consumers were located).

## PARTIES

4. Plaintiff Thomas J. Henry Law is a Texas professional limited liability company with its principal place of business at 5711 University Heights Blvd., Suite 101, San Antonio, Texas, 78249.

5. Plaintiff Thomas J. Henry is a Puerto Rican resident.

6. Defendant Angel L. Reyes & Associates PC is a Texas law firm, with its principal place of business at One Preston Centre, 8222 Douglas Avenue, Suite 400, Dallas, Texas 75225. That Defendant also has an office in Houston, Texas, at 3040 Post Oak Blvd., Suite 825, Houston, Texas 77056.

7. Upon information and belief, Defendant Angel L. Reyes is a Texas resident domiciled in Dallas.

## STATEMENT OF THE CASE

8. This lawsuit arises out of Defendants' intentional use of Plaintiffs' registered trademark to knowingly deceive and confuse consumers who are searching specifically for Plaintiffs' services. Defendants' fraudulent scheme involves buying keyword advertisements using Plaintiffs' registered marks for Google searches made from mobile devices, and using them in conjunction with confusingly similar advertisements which often incorporate Plaintiffs' marks into the text of Defendants' advertisements. In addition to including confusingly similar advertisements, Defendants' advertisements will often include, not simply a link to their own website, but also an additional "click-to-call" button that targets mobile devices and users. Instead

of linking to a website, once the button is tapped by a consumer, the advertisement causes the device to call a predetermined phone number.

9.  To further their objectives in this illegal scheme, Defendants have bid increasingly higher amounts to strategically place their own confusing advertisements next to—and often before—Plaintiffs' own advertisements in the search results. Defendants have done so intentionally, knowing that having their advertisement appear next to or before Plaintiffs' advertisement will cause a significant number of consumers specifically searching for Plaintiffs to be confused and contact Defendants instead.

10. This is not a situation involving legitimate comparative advertising. Rather, Defendants here are knowingly and intentionally using Plaintiffs' well-known trademark to deceive and confuse consumers.

## FACTS

**A.  Thomas J. Henry**

11. Thomas J. Henry Law (or, "the Firm") is a preeminent Texas personal injury law firm, representing injured parties in all types of personal injury cases. The Firm focuses on helping Texas injury victims and their families recover to the greatest extent possible, while at the same time using the legal system to make society a safer place to live.

12. Thomas J. Henry Law was formed, and is led by, Thomas J. Henry, who has become widely known in Texas over the course of his legal career. He graduated from St. Mary's School of Law and was admitted to practice law in Texas in 1988.

13. The success of Thomas J. Henry Law is the result of decades of hard work, building a strong reputation for aggressively representing Texas injury victims and their families. Over the years, Thomas J. Henry Law has built a strong referral base comprised of many satisfied clients and

a strong reputation in the community for successfully representing Texas injury victims and their families.

14. This reputation is the result not only of the hard work of Plaintiffs, but also of the significant effort and expense they have incurred in promoting themselves throughout Texas.

15. Plaintiffs' advertising efforts stem from a desire to provide knowledge to and serve members of the community that are unfamiliar with the legal system or otherwise unaware of their legal rights. That commitment remains one of the driving forces behind the Firm's practice.

**B.     The Henry Mark**

16. Since at least 1993, Thomas J. Henry has consistently and continuously used its name and trademark, including THOMAS J. HENRY and THOMAS J. HENRY LAW, (collectively, the "Henry Mark") to identify and to promote the legal services they provide.

17. The Henry Mark is inherently distinctive and serves to identify and indicate the source of Plaintiffs' services to the consuming public.

18. In accordance with the provisions of federal law, the Henry Mark was registered on the Principal Register of the United States Patent and Trademark Office. *See* U.S. Reg. No. US Registration No. 5189589. The registration is valid and subsisting, and is incontestable under 15 U.S.C. § 1065. A true and correct copy of the registration is attached hereto as **Exhibit A**.

**C.     Thomas J. Henry's Well-Known Brand**

19. In order to build a strong brand for aggressively representing Texas injury victims and their families, Thomas J. Henry advertises on television, radio, newspapers, billboards, and on the internet. The Henry Mark is consistently used in Plaintiffs' advertisements across all media formats, and across U.S. markets as well. The advertisements themselves are strategically designed to position the Firm as leading attorneys capable of handling all types of personal injury

claims. The bulk of Plaintiffs' advertising is in the largest markets in Texas—Houston, San Antonio, Austin, and Dallas-Fort Worth.

20. Since 1993, Plaintiffs have promoted the Firm using the Henry Mark on television, internet, radio, newspaper, and billboard advertisements targeting the Houston, San Antonio, Austin, and Dallas-Fort Worth markets.

21. For each of these major Texas markets, Plaintiffs have run numerous television advertisements in both English and Spanish on multiple television stations throughout the year.

22. The use of television advertisements in these major Texas markets has allowed the Plaintiffs to reach millions and build an incredibly strong brand. The Houston market is the eighth largest television market in the nation, reaching millions of viewers. The San Antonio market is the thirty-first largest television market in the nation, reaching millions of viewers as well. The Dallas-Fort Worth market is the fifth largest television market in the nation, reaching over 7 million viewers. Combined, Plaintiffs' television advertising allows them to reach more than half of all Texans, as well as other people throughout the United States.

23. A review of the television advertisements the Plaintiffs have run in these major Texas markets and throughout the United States shows that the commercials obtain significant exposure for the Firm.

24. For each of these major Texas markets, Plaintiffs have run numerous radio advertisements in both English and Spanish on multiple radio stations throughout the year.

25. The use of radio advertisements in these major markets has allowed Plaintiffs to reach millions of Texans and others throughout the United States and enhance their brand recognition. The Houston market is the sixth-largest radio market in the nation, reaching more than 5 million listeners. The San Antonio market is the twenty-sixth largest radio market in the

nation, reaching more than 1.8 million listeners. And the Dallas-Fort Worth market is the fifth-largest radio market in the nation, reaching more than 5.3 million listeners. Combined, Plaintiffs' radio advertising allows them to reach over 12 million Texans and even more throughout the United States.

26. A review of the radio advertisements Plaintiffs ran in these major Texas markets shows that the commercials obtain significant exposure for the Firm.

27. For each of these major Texas markets, Plaintiffs ran numerous billboard advertisements in both English and Spanish. At any given time, Thomas J. Henry has numerous billboard advertisements in the Houston, San Antonio, Austin, and Dallas-Fort Worth market.

28. Plaintiffs' advertisements, all of which prominently incorporate the Henry Mark, have enabled Thomas J. Henry to develop very strong brand recognition in Texas, and throughout the United States.

29. As a result of Plaintiffs' long use and promotion of the Henry Mark, the Henry Mark has become distinctive to distinguish Plaintiffs and their services from those of others, and to distinguish the source or origin of Plaintiffs' services. As a result of these efforts by Plaintiffs, the consuming public in Texas, and throughout the United States, widely recognizes and associates the Henry Mark with Plaintiffs.

30. As a result of Plaintiffs' long use and promotion of the Henry Mark, Plaintiffs have acquired valuable and enforceable rights in those marks.

**D.    The Firm's Internet Advertising**

31. As with their television advertising, the Plaintiffs were also early leaders among lawyers in using the internet to advertise their legal services.

32. All the search engine advertisements purchased by Plaintiffs prominently include

the Henry Mark and clearly identify Thomas J. Henry as the source of the advertisement.

E.     **Defendants' Infringing Scheme**

33.    Upon information and belief, Defendant Angel L. Reyes is the sole shareholder of Defendant Angel L. Reyes & Associates PC.

34.    Upon information and belief, Defendant Angel L. Reyes, as sole shareholder, directs and controls the activities of Defendant Angel L. Reyes & Associates PC; has the ability to bind Defendant Angel L. Reyes & Associates PC in transactions; and is responsible for Defendant Angel L. Reyes & Associates PC's advertising strategies, including its use of the Henry Mark described herein.

35.    Defendants are engaged in a fraudulent scheme to trade on the goodwill and reputation of Plaintiffs and the Henry Mark in Texas, and to deceptively induce prospective clients who specifically seek out the Henry Firm into mistakenly contacting and engaging Defendants instead.

36.    To carry out their scheme, Defendants purchase the Henry Mark as keyword advertisements through Google's search engine on web searches on computers and mobile devices and use them in conjunction with confusingly similar advertisements which often incorporate the Henry Mark into the text of Defendants' advertisements. Upon information and belief, Defendants purchase the Henry Mark as keyword advertisements because of the likelihood that consumers will be confused and quickly click on Defendants' advertisement, including the click-to-call button, not realizing that the link is not affiliated with Plaintiffs.

37.    As a result, Google searches for Thomas J. Henry result in search pages that display Defendants' advertisement, often directly below the Henry Mark—and before Plaintiffs' own similar advertisements—while often incorporating the Mark into the text of Defendants'

advertisements, as shown in the screenshots below:







38.    As shown above, Defendants' online advertisements do not always specifically name a particular lawyer or law firm as the source of the advertisement.  Instead, Defendants' advertisements include headers in larger and distinct font that incorporate the Henry Mark.  In the smaller text of the body of the advertisement, the firm name is not always provided, and again the text of the advertisement includes the Henry Mark.  As shown above, by including the Henry Mark in the text of their advertisements, Defendants ensure that when someone runs a search for Thomas J. Henry or Thomas J. Henry Law, the Henry Mark will appear in bold within Defendants' advertisements in the search results.

8

39. Besides including and highlighting the Henry Mark, Defendants' search engine advertisements are designed to display generic terms that consumers might associate with any personal injury firm. Consumers specifically searching for Thomas J. Henry are likely to believe that Defendants' advertisements are actually for Plaintiffs, or that Defendants are somehow affiliated with Plaintiffs. This is particularly true on mobile devices, where consumers are quickly searching, often when dealing with the stressful aftermath of an accident, the typeface of the advertisements is much smaller, and the only content displayed on the screen is an advertisement directly below the Henry Mark, which consumers have entered as a search term.

40. Defendants' mobile search engine advertisements will often include, not simply a link to their own website, but also an additional "click-to-call" button that targets mobile devices and users, and instead of linking to a website, once the button is tapped by a consumer, the advertisement causes the device to call a predetermined phone number. Consumers who click on the click-to-call button (intentionally or not) are then connected to a call center operated by Defendants. Consumers who click on the click-to-call button are not directed to any separate website or given any further information regarding Defendants before the call is made.

41. Also as part of their scheme, Defendants are bidding for the Henry Mark as keyword advertisements. The effect of Defendants' higher bids is not only to drive up the cost for Plaintiffs to purchase their own mark for keyword searches, but also to allow Defendants' advertisements to appear next to or before Plaintiffs' own advertisements. By having their advertisements appear before Plaintiffs, Defendants know that a large percentage of consumers searching specifically for Thomas J. Henry will be confused and click on the first advertisement listed, particularly if it includes the Henry Mark within the header or text of the advertisement. By having their generic and confusing advertisements appear next to or before Plaintiffs'

advertisements, Defendants are able to confuse consumers and cause a higher number of consumers searching specifically for Thomas J. Henry to instead be directed to Defendants or to mistakenly call Defendants based on the advertisement without realizing that it is not either Plaintiffs or affiliated with Plaintiffs.

42. In this manner, Defendants wrongfully induce prospective clients trying to reach Plaintiffs into engaging Defendants' firm. The nature of their scheme leaves little doubt as to Defendants' bad-faith intent to trade on Plaintiffs' goodwill and reputation.

43. Defendants have used and are using the Henry Mark in commerce, including in Texas. Defendants' use of these marks began long after Plaintiffs developed rights in the Henry Mark and after the Henry Mark became famous in Texas.

44. Defendants are not affiliated with or sponsored by Plaintiffs and have not been authorized by Plaintiffs to use the Henry Mark, or any mark confusingly similar to the Henry Mark.

45. Plaintiffs are aware of at least three other instances where Defendants have resorted to the same type of misconduct.

F.  **Effect of Defendants' Scheme**

46. Defendants' unauthorized use of the Henry Mark is likely to cause confusion, to cause mistake, and/or to deceive customers and potential customers of the parties, at least as to some affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' services by Plaintiffs.

47. Defendants' unauthorized use of the Henry Mark falsely designates the origin of their services and falsely and misleadingly describes and represents facts with respect to Defendants and their services.

48. Defendants' unauthorized use of the Henry Mark enables Defendants to trade on and receive the benefit of goodwill built up at great labor and expense by Plaintiffs over the years, and to gain acceptance for their services not solely on their own merits, but on the reputation and goodwill of Plaintiffs, the Henry Mark, and Plaintiffs' services.

49. Defendants' unauthorized use of the Henry Mark is likely to dilute the famous Henry Marks as their use weakens the ability of the marks to clearly and unmistakably distinguish the source of Plaintiffs' services.

50. Defendants' unauthorized use of the Henry Mark unjustly enriches Defendants at Plaintiffs' expense. Defendants have been and continue to be unjustly enriched by obtaining a benefit from Plaintiffs by taking undue advantage of Plaintiffs and their goodwill. Specifically, Defendants have taken undue advantage of Plaintiffs by trading on and profiting from the goodwill in the Henry Mark developed and owned by Plaintiffs, resulting in Defendants wrongfully obtaining a monetary and reputational benefit for their own business and services.

51. The Defendants not only used the Henry Mark, but also used the content of Plaintiff's advertising. The clear purpose of Defendants' actions was to take Plaintiffs' successful results of over $1 Billion in four years and make it appear as though Defendants were some way associated with these types of significant results. Very few law firms achieve $1 billion of recovery in just four years. Plainly, the Defendants' use of the Henry Mark in their advertising was to enhance their own image when they themselves have never achieved any result to this extent.

52. Defendants' unauthorized use of the Henry Mark removes from Plaintiffs the ability to control the nature and quality of the services provided under the Henry Mark, and places the valuable reputation and goodwill of Plaintiffs in the hands of Defendants, over whom Plaintiffs have no control.

53. Unless these acts of Defendants are restrained by this Court, they will continue, and they will continue to cause irreparable injury to Plaintiffs and to the public for which there is no adequate remedy at law.

## COUNT I: FEDERAL TRADEMARK INFRINGEMENT

54. Plaintiffs repeat the allegations above as if fully set forth herein.

55. The acts of Defendants complained of herein constitute infringement of the federally registered Henry Mark in violation of 15 U.S.C. § 1114(1).

56. Defendants' acts complained of herein have been deliberate, willful, intentional, or in bad faith, with full knowledge and conscious disregard of Plaintiffs' rights in the Henry Mark, and with intent to cause confusion and to trade on Plaintiffs' vast goodwill in the Henry Mark. In view of the egregious nature of Defendants' infringement, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## COUNT II: VIOLATION OF LANHAM ACT SECTION 43(a)

57. Plaintiffs repeat the allegations above as if fully set forth herein.

58. The acts of Defendants complained of herein constitute trademark infringement, false designation of origin, false or misleading descriptions or representations of fact and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

59. Plaintiffs have been damaged by Defendants' acts of trademark infringement, false designation or origin, false or misleading descriptions or representations of fact and unfair competition.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that:

(a) Defendants, as well as their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, be permanently enjoined and restrained from using the Henry Mark and any other mark or name confusingly similar to or likely to cause dilution of the Henry Mark, including by purchasing the Henry Mark or any confusingly similar marks as keyword advertisements, and from any attempt to retain any part of the goodwill misappropriated from Plaintiffs, including but not limited to by purchasing the Henry Mark as keywords;

(b) Defendants, as well as their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, be required to deliver up and destroy all internet postings and advertisements, and any other materials bearing or using the Henry Mark and/or any other mark or name that is confusingly similar to or likely to dilute the Henry Mark;

(c) Defendants be ordered to file with this Court and to serve upon Plaintiffs, within thirty (30) days after the entry and service on Defendants' of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

(d) Plaintiffs recover all damages they have sustained as a result of Defendants' activities, and that said damages be trebled. Also, the law provides specific relief when a party, as here, willfully infringes on a registered Trademark or willfully misappropriates a party's name and/or likeness for commercial purposes. *See* 15 U.S.C. § 1117, which provides for statutory damages for willful conduct of not more than $2,000,000 per counterfeit mark, or as the Court considers just. Plaintiffs seek these statutory damages, where appropriate;

(e) An accounting be directed to determine Defendants' profits resulting from their

activities and that such profits be paid over to Plaintiffs, increased as the Court finds to be just under the circumstances of this case;

      (f)      Plaintiffs recover their reasonable attorneys' fees;

      (g)      Plaintiffs recover their costs of this action and prejudgment and post-judgment interest; and

      (h)      Plaintiffs recover such other relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiffs demand a jury trial in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**BECK REDDEN LLP**

By: /s/ David J. Beck
    David J. Beck
    State Bar No. 00000070
    Federal ID No. 16605
    dbeck@beckredden.com
    Alex B. Roberts
    State Bar No. 24056216
    Federal ID No. 865757
    aroberts@beckredden.com
    Catherine Buthod
    State Bar No. 24140530
    Federal ID No. 3888692
    cbuthod@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

**ATTORNEYS FOR THOMAS J. HENRY LAW AND THOMAS J. HENRY**